**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

IN RE:
**BRUCE LEE JENNINGS,**
                              **Debtor.**
_____

**QUARLES AND BRADY, LLP,**
                              **Appellant,**

**-vs-**                                                    **Case No.  6:05-cv-248-Orl-19DAB**

**BRANDON JAMES MAXFIELD,**
                              **Appellee.**
_____

# ORDER

Appellant Quarles & Brady, LLP ("Quarles & Brady" or the "law firm"), appeals, *inter*

*alia,* from an Order entered by the United States Bankruptcy Court for the Middle District

of Florida ("Bankruptcy Court") (1) disqualifying Quarles & Brady from serving as counsel

for eleven related debtors in a consolidated bankruptcy case, (2) denying Quarles &

Brady's request for fees, and (3) requiring disgorgement of any pre-petition retainer

received by Quarles & Brady.  (Bankr. Dkt. No. 890, filed Nov. 16, 2004, pp. 1-2).[1]  This

case comes before the Court on the following:

1.     Appellant's Revised Opening Brief on Appeal (Doc. No. 33, filed April 22,

       2005);

2.     Answer Brief for Appellee United States Trustee ("U.S. Trustee") (Doc. No.

       38, filed May 12, 2005);

_____

[1] References to the Bankruptcy Court refer to docket entries for Bankruptcy Petition
number 3:03-bk-04926-JAF unless otherwise indicated.

3.    Answer Brief for Appellee Brandon J. Maxfield ("Maxfield") (Doc. No. 41, filed May 17, 2005);

4.    Appellant's Reply Brief on Appeal (Doc. No. 43, filed June 14, 2005);

5.    Motion to Strike Appellant's Reply Brief by Appellee Maxfield (Doc. No. 44, filed June 24, 2005);

6.    Response to Motion to Strike by Appellant (Doc. No. 46, filed July 5, 2005); and

7.    Order of Magistrate Judge Baker denying Motion to Strike (Doc. No. 47, filed August 2, 2005).

### I. Background of the Case

On May 14, 2003, Quarles & Brady filed eleven Chapter 11 Bankruptcy petitions in the Bankruptcy Court on behalf of the Rhonda D. Jennings California Trust, the Rhonda D. Jennings Nevada Trust, the Kimberly K. Jennings California Trust, the Kimberly K. Jennings Nevada Trust, the Bradley A. Jennings California Trust, the Bradley A. Jennings Nevada Trust (collectively the "Trust Debtors"), RKB Investments ("RKB"), Bruce L. Jennings ("Jennings"), Janice K. Jennings ("Janice Jennings"), Bryco Arms, Inc. ("Bryco"), and B.L. Jennings, Inc. ("B.L. Jennings") (all collectively the "Debtors"). (Bankr. Doc. No. 24, filed May 28, 2003, pp. 4-5). Each of the foregoing entities is owned, managed or directed by Jennings or his ex-wife Janice Jennings. (Bankr. Dkt. No. 889, Nov. 16, 2004, p. 2). Shortly after filing the petitions, the Bankruptcy Court granted Debtors' motion for joint administration of the eleven bankruptcy estates. (Bankr. Dkt. No. 24, p. 5).

The Bankruptcy Court's findings of fact concerning the events before and after the filings of Debtors' petitions are as follows:

On May 23, 2001 Maxfield commenced an action against Jennings, Bryco, and B.L. Jennings in California Superior Court to recover damages for the personal injuries he suffered.  Maxfield also sought to recover from the assets of Janice Jennings, [RKB and the Trust Debtors] any judgment liability obtained against Jennings, Bryco, and B.L. Jennings under joint venture/enterprise, partnership, and alter ego theories.  Jennings was served with the Maxfield complaint in October of 2001.

In January of 2002 Jennings first met with Ned Nashban or another attorney at Quarles & Brady, LLP.  The advice given to Jennings by Quarles & Brady concerned "Florida residency, domicile, and exempt assets".  Jennings met or had additional conversations with Nashban or another attorney at Quarles & Brady in February of 2002 and received advice concerning "domicile, residency, annuities, home purchase, estate planning, possible bankruptcy options and real estate mortgages."  On March 5, 2002 Jennings purchased a $500,000.00 annuity issued by Allianz Insurance Company.

Prior to October 2002 RKB owned the property where Bryco conducted business (the "Clinton Street Property").  On December 14, 2000 Bryco, as lessee, and RKB, as lessor, had entered into a lease of the Clinton Street Property (the "Bryco-RKB Lease").  The Lease commenced on January 1, 2001 and had a five year term.  In October 2002 RKB sold the Clinton Street Property to Knowleton Properties ("Knowleton").  On October 11, 2002 Bryco, as lessee, and Knowleton, as lessor, entered into a lease of the Clinton Street Property (the "Bryco-Knowleton Lease"). RKB paid a $337,507.20 security deposit to Knowleton on behalf of Bryco.  On October 16, 2002 Knowleton executed an assignment of rents which provided that "as each rental payment by Bryco is made to Knowleton in accordance with the Lease Agreement dated September 17, 2002, Knowleton shall refund such rental payment it receives back to [RKB] up to the total amount of the prepaid rent in the amount of $337,507.20."  Bryco owes Knowleton, and thus by extension, RKB, at least $150,000.00 for rent.

During 2002 $500,000.00 in loans payable by RKB to Jennings were removed from RKB's financial statements and tax returns even though no actual money changed hands.  Nashban testified that he first became aware of this "cancellation of indebtedness" on April 29, 2004 at the first hearing on these matters.

On May 8, 2003 Quarles & Brady prepared an engagement letter for representation of Debtors in a Chapter 11 bankruptcy proceeding.  The engagement letter provided that Debtors would be jointly liable for the payment of Quarles & Brady's fees. The engagement letter also recognized potential conflicts of interest and provided for a waiver of those conflicts among the parties.  The letter specifically provided:

-3-

> Since we may be filing multiple Chapter 11 cases and potentially consolidating the cases, either administratively or substantively, by executing this engagement letter, you also waive any potential conflicts among the parties that may arise. . . . However, if the Court does determine that there is a conflict that cannot be waived, we understand and agree that it is your intention that we represent the [Trust Debtors] and [RKB] and the remaining parties will secure other counsel, subject to Court approval.

On May 14, 2003 ("the "Petition Date") Debtors filed Chapter 11 petitions for reorganization.  On the Petition Date Nashban and Quarles & Brady were aware that the creditors of Jennings, B.L. Jennings, and Bryco Arms were attempting to reach the assets of RKB and the Trust Debtors on theories involving alter ego, constructive trust, and joint enterprise liability. The eleven cases were promptly consolidated for administrative purposes.

On May 16, 2003 Quarles & Brady filed a complaint on behalf of RKB and the Trust Debtors seeking a determination that RKB and the Trust Debtors have no liability to Jennings, Bryco, or B.L. Jennings under any constructive trust, alter ego, joint enterprise or other legal theory.

On May 19, 2003 Quarles & Brady filed Debtor's Application for Employment of Attorneys (the "Application") along with Affidavit of proposed Attorney for Debtor-in-Possession (the "Affidavit") in the consolidated case.

Paragraph 8 of the Application provided as follows:

> Quarles & Brady, LLP represents no creditors of the estate nor any interest adverse to the Debtors as a [sic] Debtor's-in-possession or to the estate in matters upon which it is engaged to perform legal services for the Debtors-in-possession, and its employment would be in the best interest of the estate.

Paragraph 4 of the Affidavit provided as follows:

> That such firm has no connection with the Debtors herein, its creditors or any other party in interest or their respective attorneys or accountants, and that it represents no interest adverse to that of the Debtors in the above captioned matter, except that it was owed legal fees for work done for one of the Debtors, Bruce Lee Jennings, pre-petition, which bill has been paid to the law firm prior to the commencement of this action.

> On May 28, 2003 the [Bankruptcy Court] entered an order approving the employment of Quarles & Brady.
>
> On June 20, 2003 Jennings filed his schedules.  Jennings' schedules list as an asset a claim for back payroll of approximately $875,000.00 against B.L. Jennings.  On June 23, 2003 B.L. Jennings filed its schedules. B.L. Jennings' schedules indicate that Jennings held a secured claim against B.L. Jennings for a loan to B.L. Jennings in the amount of $1,404,000.00 and that B.L. Jennings' total assets were $1,278,952.34, $1,117,336.50 of which represented inventory on hand.  Nashban testified that he reviewed the schedules before they were filed.  Nashban did not amend the Application or Affidavit to disclose that information.  During the first month and a half of Bryco's case $266,019.50 in pre-petition inventory was consumed.  By November 2003 all of the pre-petition inventory subject to Jennings' pre-petition lien had been sold and the proceeds thereof consumed by B.L. Jennings' estate.  Quarles & Brady failed to seek adequate protection from B.L. Jennings for Jennings' estate for the use of Jennings' collateral.

(Bankr. Dkt. No. 889, pp. 2-6 (citations, footnotes and some parenthetical indications omitted)).

The Bankruptcy Court found that Debtors' Application for Employment of Attorneys and Quarles & Brady's supporting Affidavit were "woefully insufficient" for the reasons set forth in Part II below.  (*Id.* at 8-10).  The Bankruptcy Court also found that Debtors and the law firm failed to amend the application for employment and supporting affidavit.  (*Id.*).  In addition, the Bankruptcy Court found that Quarles & Brady's simultaneous representation of the various Debtors rendered the firm not disinterested within the meaning of the Bankruptcy Code.  (*Id.* at 10-12).  Lastly, the Bankruptcy Court determined that "Quarles & Brady's initial and continuing violation of the disclosure rules, its non-disinterestedness, and the injury to Debtors resulting from its inability to independently evaluate the various claims, transfers, and interests in these related cases warrants: 1) complete denial of compensation in these cases and 2) disgorgement of any pre-petition retainer."  (*Id.* at 13).

The Bankruptcy Court denied Quarles & Brady's request to alter or amend the judgment, and the law firm now appeals to this Court.  (Bankr. Dkt. No. 921, filed Dec. 16, 2004 & Doc. No. 1, filed Feb. 25, 2005, Attach. No. 1).  The Court has jurisdiction pursuant to 28 U.S.C. § 158(a).

## II. Discussion

Stripped of its employment and fees, Quarles & Brady takes issue with each of the Bankruptcy Court's findings of fact and conclusions of law.  As an initial matter and after review of the extensive record on appeal, including the Bankruptcy Court hearing transcripts, numerous party motions and Bankruptcy Court opinions and memoranda, the Court determines that the Bankruptcy Court's findings of fact as set forth above were not clearly erroneous.

The Court will  address the law firm's arguments concerning the standard of review which applies on appeal and its arguments ranging across the landscape of the law on the disclosure of relationships, the determination of conflicts of interest, and the employment and compensation of professionals under the Bankruptcy Code.

### A.      Standard of Review

Quarles & Brady suggests, using several lines of argument, that this Court should review each of the issues on appeal *de novo*.  (Doc. No. 33, pp. 6-8).  First, the law firm contends that, as none of the material facts are in dispute, the Court should review the Bankruptcy Court's legal conclusions *de novo*.  (*Id.* at 6).  Next, Quarles & Brady reminds the Court that mixed questions of law and fact and the legal significance accorded to facts are reviewed *de novo*.  (*Id.* at 7).

The Court declines Quarles & Brady's invitation to re-frame the standard of review. Although the law firm may wish to emphasize each aspect of the Bankruptcy Court's Order subject to *de novo* review, a more succinct standard is usually articulated by the Eleventh Circuit. In reviewing an order of a Bankruptcy Court, this Court reviews the Bankruptcy Court's legal conclusions *de novo*, but it must accept the Bankruptcy Court's factual findings unless they are clearly erroneous. *Rush v. JLJ Inc.* (*In re JLJ Inc.*), 988 F.2d 1112, 1116 (11th Cir. 1993). This Court may not make independent factual findings. *Id.*

The Bankruptcy Court's decision to alter or amend judgment is committed to the sound discretion of the Bankruptcy Judge and will not be overturned on appeal absent an abuse of discretion. *See Am. Home Assurance Co. v. Glenn Estess & Assocs.*, 763 F.2d 1237, 1238-39 (11th Cir. 1985). Likewise, the Court reviews an award or refusal to award attorney's fees for abuse of discretion. *Stroock & Stroock & Lavan v. Hillsborough Holdings Corp.* (*In re Hillsborough Holdings Corp.*), 127 F.3d 1398, 1401 (11th Cir. 1997). An abuse of discretion occurs if the Bankruptcy Court fails to apply the proper legal standard or to follow proper procedures in making the determination, or bases an award upon findings of fact that are clearly erroneous. *Id.*

## B.     Disclosure of Relationships

### 1.     Bankruptcy Court's Findings of Fact and Conclusions of Law

The Bankruptcy Court found that Debtor's application for employment and Quarles & Brady's accompanying affidavit were "woefully insufficient" for failing to disclose relevant connections. (Bankr. Dkt. No. 889, p. 8). These undisclosed connections were: (1) the financial obligations of B.L. Jennings to Jennings, (2) the existence of alter ego, constructive trust, and joint enterprise claims pending against Janice Jennings, RKB and

the Trust Debtors, (3) the financial transactions of the Debtors involved in the Bryco-RKB Inv. and Bryco-Knowleton leases, and (4) Quarles & Brady's pre-petition exemption planning for Jennings. (*Id.*).  In addition, the Bankruptcy Court found that the law firm failed to amend its application for employment or supporting affidavit.  (*Id.* at pp. 2-6, 8-9).

## 2.    Arguments on Appeal

On appeal, Quarles & Brady asserts that it did disclose to the Bankruptcy Court each of these connections, although not in the application for employment or supporting affidavit. (Doc. No. 33, pp. 42-46, 47-55).  These connections were disclosed, Quarles & Brady argues, in various filings and hearings either prior to or after the application for employment.  (*Id.*).  The law firm contends that these connections were never concealed from the Bankruptcy Court and were sufficient to satisfy the disclosure requirements of the Bankruptcy Rules.  (*See id.* at 46, 53).  Moreover, Quarles & Brady avers that its application for employment did in fact disclose the pre-petition exemption work performed on behalf of Jennings.[2]  (*Id.* at 54-55).

The U.S. Trustee asserts that the Bankruptcy Court correctly concluded that Quarles & Brady failed to comply with the disclosure requirements of Bankruptcy Rule 2014(a) by not disclosing its connections with the Debtors in the application for employment and

---

[2]  Quarles & Brady also argues that it did not fail to disclose, and indeed could not disclose, any claim that RKB owed to Jennings.  (Doc. No. 33, p. 57).  A review of the Bankruptcy Court's order, however, reveals that the RKB-Jennings loan and "cancellation of indebtedness" was not a basis for the Bankruptcy Court's findings of fact and conclusions of law concerning disclosure of the connections of Debtors and Quarles & Brady.  (Bankr. Dkt. No. 889, pp. 10-12).  Instead, the Bankruptcy Court's findings and conclusions concerning this "newly discovered" claim relate to Quarles & Brady's disinterestedness.  (*See id.* at 12).  Disclosure of this claim, then, is not an issue in this appeal. It is the fact that a claim exists and that "Quarles & Brady now has a fiduciary obligation to investigate and possibly pursue recovery" that makes this claim relevant. (*Id.*). The Court will address this issue below in the proper context.

supporting affidavit and by failing to amend the same.  (Doc. No. 38, p. 23).  The U.S.

Trustee argues that except for some unspecified pre-petition legal services performed for

Jennings, neither the application for employment nor the law firm's supporting affidavit

disclosed any connection to the Debtors.  (*Id.* at 24).  The U.S. Trustee contends that these

omissions are contrary to applicable law which places the burden on Quarles & Brady to

bring any possible conflict to the Bankruptcy Court's attention.  (*Id.* at 25-26).

In addition, the U.S. Trustee argues that the law firm's assertion that it disclosed the

pre-petition exemption work is disingenuous as the disclosure failed to include the nature

and the timing of pre-petition services.  (*Id.* at 27).  The U.S. Trustee bolsters its argument

by noting that the propriety of these pre-petition services have become contested during

the Bankruptcy proceedings and also directs the Court's attention to testimony of Quarles

& Brady attorney Ned Nashburn which suggests that he knew of the services and other

connections but choose not to disclose them to the Bankruptcy Court.  (*Id.* at 27-28).

Maxfield also emphasizes that it was Quarles & Brady's burden, and not that of the

other parties, to bring these issues to the attention of the Bankruptcy Court.  (Doc. No. 41,

p. 19).  He contends the record is replete with evidence that Quarles & Brady knew of the

potential conflicts and failed to disclose them or discovered conflicts after its appointment

and failed to amend its application.  (*Id.* at 20-23).  Maxfield argues that Quarles & Brady's

lack of candor is manifest and that the Bankruptcy Court did not err in reaching its findings

of fact and conclusions of law.  (*Id.* at 25).

### 3.    Analysis

After considering the findings of fact and conclusions of law of the Bankruptcy Court,

this Court finds no merit in Quarles & Brady's arguments.  Bankruptcy Rule 2014 is derived

from former Bankruptcy Rule 215 and works in tandem with Section 327 of the Bankruptcy Code to expose any connections that a professional has with any parties in interest in a case.  *See In re 245 Assocs., LLC*, 188 B.R. 743, 750 (Bankr. S.D.N.Y. 1995); Bankr. R. 2014 Advisory Committee's Note.  The Rule states in part:

> An order approving the employment of attorneys . . . pursuant to § 327, § 1103, or § 1114 of the Code shall be made only on application of the trustee or committee.  The application shall be filed and . . . a copy of the application shall be transmitted by the applicant to the United States trustee.  The application shall state the specific facts showing the necessity for the employment, the name of the person to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee. The application shall be accompanied by a verified statement of the person to be employed setting forth the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

Rule 2014(a).  It requires, therefore, both the applicant (*e.g.*, the Debtor) and the professional (*e.g.*, the attorney) to separately certify that no disqualifying connections exist. *In re 245 Assocs., LLC*, 188 B.R. at 750.  And the plain, unambiguous language of the Rule makes clear that such certification must be made in an application to the Bankruptcy Court. Bankr. R. 2014.

In view of the plain language of Bankruptcy Rule 2014, Quarles & Brady's arguments that the connections were disclosed through other means and were in no way concealed from the Bankruptcy Court lack merit.  The law firm had an affirmative duty to bring to the Bankruptcy Court's attention any "connection" that it might have with the parties to the proceeding in the application for employment and supporting affidavit.  *Id.*  The weight of authority is substantial and clear on this point.  *E.g.*, *Rome v. Braunstein*, 19 F.3d 54, 59

(1st Cir. 1994); *In re EZ Links Golf, LLC*, 317 B.R. 858, 862 (D. Colo. 2004); *In re Tomczak*, 283 B.R. 730, 734 (E.D. Wis. 2002); *In re Begun*, 162, B.R. 168, 177 (Bankr. N.D. Ill. 1993); *In re Love*, 163 B.R. 164, 169 (D. Mont. 1993); *In re Amdura Corp.*, 139 B.R. 963, 978 (Bankr. D. Colo. 1992); *In re Marine Outlet, Inc.*, 135 B.R. 154, 156 (Bankr. M.D. Fla. 1991).

Moreover, Quarles & Brady's arguments are contrary to settled law. *See Kravit, Gass & Weber, S.C. v. Michel* (*In re Crivello*), 134 F.3d 831, 839 (7th Cir. 1998) ("Bankruptcy courts have neither the resources nor the time to . . . root out the existence of undisclosed conflicts of interest."); *Jensen v. United States Trustee* (*In re Smitty's Truck Stop*), 210 B.R. 844, 850 (B.A.P. 10th Cir. 1997); *Rome*, 19 F.3d at 59 ("Absent the spontaneous, timely and complete disclosure required by section 327(a) and Fed. R. Bankr. P. 2014(a), court-appointed counsel proceed at their own risk."); *In re Ellsworth*, 326 B.R. 867, 875 (Bankr. M.D. Fla 2005) ("The gravity of the disclosure requirements under the Code and Rules is well-established."); *In re Gulf Coast Orthopedic Ctr.*, 265 B.R. 318, 323 (Bankr. M.D. Fla. 2001) ("Under the Rule the applicant and the professional must disclose all connections, not merely those which rise to the level of conflict."); *In re Keller Financial Services of Florida, Inc.*, 243 B.R. 806, 812 (Bankr. M.D. Fla. 1999) ("The professional must disclose all facts that bear on his disinterestedness, and cannot usurp the court's function by unilaterally choosing which connections impact on his disinterestedness and which do not."); *In re Marine Outlet, Inc.*, 135 B.R. at 155 (Bankr. M.D. Fla. 1991) ("There is no duty placed on the United States Trustee or on creditors to search the record."); *In re EWC, Inc.*, 138 B.R. 276, 280 (Bankr. W.D. Okla. 1992) (noting debtors and professionals "cannot pick and choose which connections are irrelevant or trivial" and that Bankruptcy

Courts have no obligation to "seek out conflicts of interest not disclosed").  The law concerning the disclosure requirement of the Bankruptcy Code for professionals has been aptly summarized in an article co-authored by Chief Bankruptcy Judge Sonderby:

> Under Rule 2014, a professional must disclose all facts pertinent to the court's determination as to whether the professional is disinterested or holds an adverse interest to the estate.  Applicants may not pick and choose which connections are irrelevant or trivial.  "Although an attorney need not disclose every past or remote connection with every party in interest, he must disclose those presently or recently existing, whether they are business or personal in nature, which could reasonably have an effect on the attorney's judgment in the case."  The duty to disclose is a continuing duty that continues even after a professional's employment is approved.
>
> In addition, it is counsel's obligation to bring all relevant facts before the court on the application for employment.  The reviewing court has no duty to search the file to determine whether there are actual or potential conflicts of interest.
>
> . . . .
>
> Absent the spontaneous, timely and complete disclosure required by section 327(a) and Bankruptcy Rule 2014(a), court-appointed counsel proceeds at its own risk.

Susan Pierson Sonderby & Kathleen M. McGuire, *A Gray Area in the Law? Recent Developments Relating to Conflicts of Interest and the Retention of Attorneys in Bankruptcy Cases*, 105 COM. L.J. 237, 251-52 (2000) (footnotes omitted) (summarizing judicial interpretation of the disclosure requirement of the Bankruptcy Code for professionals).

In short, neither argument excuses Quarles & Brady from discharging its duty of disclosure.  The record before the Bankruptcy Court amply demonstrates that Debtors and the law firm failed to comply with Rule 2014 and failed to amend or supplement the application and affidavit as further "connections" were uncovered.

In addition, Quarles & Brady's argument that the pre-petition services performed on behalf of Jennings were adequately disclosed is not well taken.  In the application and

affidavit, Debtors and the law firm made only a single statement that Quarles & Brady "was owed legal fees for legal work done for one of the Debtors, Bruce Lee Jennings, pre-petition, which bill has been paid to the law firm prior to the commencement of this action." (Bankr. Dkt. No. 889, p. 5).  This is merely a conclusory statement without the required specification of facts.

A professional who proffers such a statement ignores the plain language of Rule 2014 which requires "the specific facts showing . . . all of the person's connections."  The reason for this requirement is manifest.  Where a professional fails to disclose the specific facts of his connections, the Bankruptcy Court cannot make an independent, informed decision as to the professional's disinterestedness.  *See In re Roberts*, 75 B.R. 402, 411 (D. Utah 1987).

In this case, a simple example illustrates the conclusory nature of Quarles & Brady's disclosure.  The law firm's statement contemplates a pre-petition payment but fails to provide the factual support for that payment, *i.e.* when payment was made.  Without this information, it is impossible to determine whether the alleged payment is an avoidable preference under the Bankruptcy Code.  This is a basic and notorious conflict arising in bankruptcy practice.[3]  *See In re Pilowtex, Inc.*, 304 F.3d 246, 252 (3d Cir. 2002).

Likewise, Quarles & Brady failed to disclose the specific facts concerning the pre-petition representation.  The law firm failed to disclose, for example, who rendered the services, when were the services rendered, and upon what subject counsel was sought and

---

[3]  The Court does not suggest that this payment was an avoidable preference but rather uses this example to illustrate that because the disclosure was so devoid of fact, the Bankruptcy Court could not determine from the application and supporting affidavit the one issue directly implicated by their content.

given.   The Bankruptcy Court required these facts in order to make a full and informed decision as to whether the pre-petition representation conflicted with representation of the Debtor estates.   Generalized disclosures and conclusory statements that counsel are disinterested are insufficient to satisfy the requirements of Rule 2014.   *United States v. Azevedo* (*In re Azevedo*), 92 B.R. 910, 911 (Bankr. E.D. Cal. 1988).

Accordingly, the record supports the Bankruptcy Court's finding that Quarles & Brady failed to adequately disclose its pre-petition exemption work performed on behalf of Jennings and failed to disclose the law firm's various connections.

### C.   Conflicts of interest

#### 1.   Bankruptcy Court's Findings of Fact and Conclusions of Law

Next, Quarles & Brady challenges the Bankruptcy Court's findings of fact and conclusions of law concerning the simultaneous representation of the Debtors.  Because of conflicts arising from this representation, the Bankruptcy Court found that the law firm was not disinterested as required by Section 327(a) of the Bankruptcy Code.  (Bankr. Dkt. No. 889, pp. 10-12).  First, the Bankruptcy Court determined that Quarles & Brady could not impartially represent Jennings, a secured creditor, and B.L. Jennings, the obligor of Jennings' loan.  (*Id.* at 11).  Second, the Bankruptcy Court found that Quarles & Brady could not simultaneously represent RKB and Jennings because of a loan and subsequent "cancellation of indebtedness."  (*Id.* at 12).  Lastly, the Bankruptcy Court reasoned that questions surrounding the payment of a deposit by RKB on Bryco's behalf to secure a lease agreement with Knowleton Properties rendered the law firm not disinterested.  (*Id.* at 12).

#### 2.   Arguments on Appeal

-14-

On appeal, Quarles & Brady acknowledges that the Bankruptcy Court identified several conflicts of interest. (*E.g.*, Doc. No. 33, p. 28).  The law firm argues that these conflicts are, however, merely potential and not actual conflicts. (*Id.*).  Quarles & Brady contends that Section 327(c) of the Bankruptcy Code permits the Court to disqualify counsel only where an actual conflict is found to exist and not where there are mere potential conflicts. (*Id.* at 28-30, 33).  The law firm reasons that "representation of debtors with inter-debtor claims by definition does not create an actual conflict" and that "any other result would be contrary to the express language of §327(c)." (*Id.* at 28-29).  Accordingly, the law firm argues that the "representation of debtors with inter-debtor claims" can never serve as a basis for disqualification under the Bankruptcy Code.[4] (*See id.* 28-33).

In addition, Quarles & Brady contends that the three conflicts identified by the Bankruptcy Court, as a matter of fact, do not require or justify the disqualification of counsel. (*Id.* at 33-37).  First, the law firm avers that "no dollars left the universe" of the Debtor estates. (*Id.* at 33-35).  Next, the firm asserts that each conflict can be resolved, if necessary, by the appointment of special counsel. (*Id.* at 34-36).  In the context of the conflict arising from the "cancellation of indebtedness," Quarles & Brady argues that it "was unaware" of the transaction, and as such, could not be disqualified from representing Jennings or RKB. (*Id.* at 34).

---

[4] Quarles & Brady also argues that the adversary proceeding seeking resolution of alter ego, constructive trust, and joint enterprise claims among the various Debtors is not a conflict. (Doc. No. 33, p. 32-33).  Placing the validity of this argument aside, the Bankruptcy Court did not base its finding of disinterestedness on an actual conflict arising from the law firm's representation of the parties involved in the adversary action. (*See* Bankr. Dkt. No. 889, pp. 10-12).  Instead, the Bankruptcy Court found that the Rule 2014 application and its supporting affidavit were insufficient for failing to disclose the existence of these claims against Janice Jennings, RKB and the Trust Debtors. (*See id.* at 8).

Lastly, Quarles & Brady alleges that the Bankruptcy Court erred in applying the holding of *Electro-Wire Prods., Inc. v. Sirote & Permutt, P.C.* (*In re Prince*), 40 F.3d 356 (11th Cir. 1994), to the facts of this case.  The law firm distinguishes *In re Prince* and contends that its holding is limited to its facts.  (*Id.* at 37).  It also asserts that the Bankruptcy Court misinterpreted *In re Prince* to permit disqualification for potential conflicts, arguing that such case supports disqualification only where an actual conflict is found to exist.  (*Id.* at 38-39).

The U.S. Trustee, on the other hand, argues that *In re Prince* cannot be distinguished from the case at hand and asserts that Quarles & Brady erroneously contends that only actual conflicts support disqualification under *In re Prince*.  (Doc. No. 38, pp. 30-31).  The U.S. Trustee notes that Quarles & Brady was engaged in the same conduct criticized in that case, namely failing to disclose pre-petition services performed on behalf of the Debtors.  (*Id.* at 32).  Thus, the U.S. Trustee asserts that the Bankruptcy Court properly applied the holding of *In re Prince*.  (*Id.* at 31).  The U.S. Trustee also points to specific parts of the record which support each of the Bankruptcy Court's findings of fact and conclusions of law.  (*See id.* at 35-39).

Maxfield argues that Section 327(a) of the Bankruptcy Code bars Quarles & Brady from representing Debtors.  (Doc. No. 41, pp. 12-15).  In addition, he contends that the law firm is not disinterested because of its representation of both the corporate entities and their principals.  (*Id.* at 25-34).  In support of this argument, Maxfield emphasizes Jennings' status as an under-secured creditor of B.L. Jennings  (*Id.* at 25-28).  In addition, he asserts that the relationships between the corporate and individual Debtors "go far beyond the normal debtor/shareholder relationship."  (*Id.* at 29).  Maxfield also points to specific parts

of the record which support each of the Bankruptcy Court's findings of fact and conclusions of law.[5]  (*Id.* at 28-34).

### 3.    Analysis

The Court finds that Quarles & Brady's position lacks merit.  The law firm argues that Section 327(c) precludes a Bankruptcy Court from exercising its discretion where a professional has a potential conflict of interest.  Support for this argument does not flow from Section 327 when read as a whole, nor does it flow from case law interpreting Section 327.

On the one hand, the Bankruptcy Court has broad discretion over the appointment of professionals who work on behalf of a Bankruptcy estate under Section 327(a).  *Harold & Williams Dev. Co. v. United States Trustee* (*In re Harold & Williams Dev. Co.*), 977 F.2d 906, 909 (4th Cir. 1992).  That section provides:

> Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

11 U.S.C. § 327(a).  By its terms, the statute grants the Bankruptcy Court the discretionary authority to approve of the employment of professionals.  *Id.*

On the other hand, Section 327(a) establishes the basic qualifications that a professional must satisfy before serving the Bankruptcy estate.  That is, the Bankruptcy

---

[5]  In addition, Maxfield points to some "conflicts" which neither served as a basis for the Bankruptcy Court's holding of disinterestedness nor were discussed in its Order in the context of disinterestedness.  (Doc. No. 41, pp. 36-37 (arguing the alter ego declaratory judgment action is an actual conflict)).  The Court declines the invitation to comment on issues beyond the holding of the Bankruptcy Court.

Court's discretion is carefully circumscribed by the mandatory requirements of the statute. *In re Harold & Williams Dev. Co.*, 977 F.2d at 909.  The statute, then, is discretionary in part and mandatory in part.

Concerning the mandatory requirements, the Bankruptcy Court may only approve the appointment of a "disinterested person" and may not approve the appointment of a professional who holds or represents "an interest adverse to the estate."  Bankr. R. 327(a). A disinterested person is, *inter alia*, one who "does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor . . . or for any other reason."  11 U.S.C. § 101(14).  The phrase "interest adverse to the estate" is not defined by the Bankruptcy Code.  *In re Prince*, 40 F.3d at 361.  The Eleventh Circuit and other Courts, however, have adopted the meaning set forth in *In re Roberts*, 46 B.R. 815, 822-23 (Bankr. Utah 1985), *rev'd in part on other grounds*, 75 B.R. 402 (D. Utah 1987).  An "interest adverse to the estate" includes

> possessing, or serving as an attorney for a person possessing, either an "economic interest that would tend to lessen the value of the bankruptcy estate or that would create either an actual or potential dispute in which the estate is a rival claimant . . . or . . . a predisposition under the circumstances that render such a bias against the estate."

*See In re Prince*, 40 F.3d at 361 (quoting *Roger J. Au & Son, Inc. v. Aetna Ins. Co.*, 64, B.R. 600, 604 (N.D. Ohio 1986)).

Section 327(c) of the Bankruptcy Code provides an exception to the requirements of Section 327(a) where the professional seeking employment had previously represented a creditor of the Bankruptcy estate.  11 U.S.C. § 327(c).  The sub-section provides:

> In a case under chapter 7, 12, or 11 of this title, a person is not disqualified for employment under this section solely because of such person's

> employment by or representation of a creditor, unless there is objection by another creditor or the United States trustee, in which case the court shall disapprove such employment if there is an actual conflict of interest.

*Id.* In other words, where the professional is not a "disinterested person" or where the professional possesses an "interest adverse to the estate" solely because of employment by or representation of a creditor of the Bankruptcy estate, Section 327(c) permits the Bankruptcy Court once again to exercise its discretion over the professional's employment. *Id.* Nevertheless where there is an actual conflict of interest arising from the professional's employment by or representation of a creditor, the Bankruptcy Court must deny the application of employment. *Id.* Section 327(c), then, modifies the mandatory qualifications of Section 327(a), but it does not implicate the delegation of discretionary authority to the Bankruptcy Court over the appointment of professionals. It does not follow from the language of Section 327(c) mandating the disqualification of professionals where there is an actual conflict that the Bankruptcy Court is stripped of the discretion granted by Section 327(a) to disprove a professional's employment where there is a potential conflict. *In re BH & P Inc.*, 949 F.2d 1300, 1315 (3d Cir. 1991).

Moreover, none of the cases cited by Quarles & Brady contradict this interpretation of Section 327(a) and Section 327(c). Contrary to the firm's assertion, the opinion of *In re Prince* cannot be fairly read to hold that only an actual conflict can prevent a professional from serving the Bankruptcy estate. That case stands for the proposition that where the Bankruptcy Court finds that a professional is not a disinterested person, Section 328(c) permits the Bankruptcy Court to deny the professional's fees. *See In re Prince*, 40 F.3d at 359. *In re Prince* does not discuss the denial of fees where there is a potential conflict and, indeed, does not discuss the application of Section 327(c) at all. *Id.* at 359-361.

The decision of *In re Global Marine, Inc.*, 108 B.R. 998 (Bankr. S.D. Tex. 1987), is also distinguishable from the present case.  In that case, the Bankruptcy Court found that no actual conflict of interest was factually substantiated by the evidence of record.  *See id.* at 1002-04.  As such, the Court exercised its discretion and approved counsel's representation of the Bankruptcy estates.  Similarly, many of the other cited cases turn on a finding that an actual conflict did or did not exist.  These cases do not elucidate the issue at hand other than to highlight that determination of whether a conflict is actual or potential is committed to the sound discretion of the Bankruptcy Court based on the facts before it. *Cook v. Cook* (*In re Cook*), 223 B.R. 782, 789 (10th BAP 1998).

The United States Court of Appeals for the Third Circuit, however, has squarely addressed Quarles & Brady's argument.  In both *In re Marvel Entertainment Group, Inc.*, 140 F.3d 463 (3d Cir. 1998), and *In re BH & P Inc.*, 949 F.2d 1300 (3d Cir. 1989), the Court held that

> (1) Section 327(a), as well as § 327(c), imposes a per se disqualification as trustee's counsel of any attorney who has an actual conflict of interest; (2) the district court may within its discretion--pursuant to § 327(a) and consistent with § 327(c)--disqualify an attorney who has a potential conflict of interest and (3) the district court may not disqualify an attorney on the appearance of conflict alone.

*In re Marvel Entm't Group, Inc.*, 140 F.3d at 476.  The Court expressly rejected "the trustee's contention, in light of § 327(c), that [a professional] may only be disqualified based on an actual conflict."  *Id.* at 477.  The Court reiterated its interpretation that Section 327(a) presents a *per se* bar to the appointment of a law firm with an actual conflict, and gives the court wide discretion in deciding whether to approve the appointment of a law firm with a potential conflict.  *Id.*  This Court agrees that, pursuant to Section 327(a) and consistent

with Section 327(c), it is within the sound discretion of the Bankruptcy Court disqualify a law firm with a potential conflict of interest.

Nevertheless, the Bankruptcy Count found at least one actual conflict that rendered Quarles & Brady not disinterested.  (Bankr. Dkt. No. 889, pp. 11-12).  The Bankruptcy Court explicitly reasoned that "[b]ecause B.L. Jennings possessed an economic interest that created an actual dispute in which Jennings was a rival claimant, Quarles & Brady's simultaneous representation thereof renders them not disinterested." (*Id.*).  It is less clear from its discussion of the two additional conflicts whether each is deemed an actual or a potential conflict.  (*See Id.* at 12).  The Bankruptcy Court, however, found that claims underlying each additional conflict rendered Quarles & Brady not disinterested because the law firm would have to simultaneously investigate a claim and defend against that investigation.  (*Id.*).  Given the idiomatic language (actual versus potential) used by Congress and the Courts, the parties understandably disagree as to how to characterize each conflict and whether the factual record supports the Bankruptcy Court's characterization of each conflict.

In view of the law, however, Quarles & Brady's contention that the Bankruptcy Court erred in finding an actual conflict of interest is of little assistance.  The law firm concedes that the Bankruptcy Court identified three conflicts which are at least "potential" in nature.  Both the law firm's initial brief and its reply brief state that the "conflicts identified by the Bankruptcy Court are . . . potential conflicts and not actual conflicts." (*See* Doc. No. 33, p. 28; *see also* Doc. No. 43, p. 5).  This is a binding admission which is repeated throughout its briefs and is consistent with the law firm's primary arguments on appeal.  *See American Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 227 (9th Cir.1988).

As discussed above, it is within the sound discretion of the Bankruptcy Court to disqualify an attorney who has a potential conflict of interest.  Even assuming that the conflicts at issue were potential, the Court concludes that the Bankruptcy Court acted within its sound discretion in disqualifying Quarles & Brady in view of the number and extent of the conflicts and the initial and continued failure to disclose those conflicts.

The Court, however, also finds that the Bankruptcy Court exercised sound discretion in its characterization of the conflicts presented here.  In this case, the Bankruptcy Court properly recognized the professional's obligation to independently serve the Bankruptcy estate.  *See In re Prince*, 40 F.3d at 360.  Quarles & Brady's arguments that the funds did not "leave the universe of Debtors" or that the law firm had no knowledge of certain claims or that special counsel may be appointed each fail to appreciate the role of counsel in Bankruptcy proceedings.  "The purpose of section 327(a) of Title 11 of the United States Code is to ensure impartiality in bankruptcy representation."  *Id.*  Counsel must provide its client "a conflict-free, impartial, independent evaluation of the potential claims of and against [the Bankruptcy] estate."  *Id.*  Where there are conflicts of interest, the Bankruptcy estate is prejudiced because counsel cannot make decisions without bias and in the best interest of the client.  *Id.*

It is within the sound discretion of the Bankruptcy Court to decide whether counsel can make unbiased decisions based upon the facts of the case before it.  In this case, the Bankruptcy Court found that B.L. Jennings and Jennings were in an "actual dispute" because Jennings was a secured creditor of B.L. Jennings.[6]  (Bankr. Dkt. No. 889, pp. 11-

_____

[6]  Quarles & Brady disputes in its reply brief, for what appears to be the first time, that this security interest exists.  (Doc. No. 43, pp. 11-12).  This is in spite of the fact that the secured loan was disclosed to the Bankruptcy Court in the Debtors' schedules and that

12).  The Bankruptcy Court discussed in detail how Quarles & Brady could not advocate for the continued operation of B.L. Jennings without impacting Jennings' security interests in the pre-petition assets of B.L. Jennings.  (*Id.* at 10-12).  Nor could Quarles & Brady seek to protect Jennings' collateral without inhibiting the continued operation of B.L. Jennings. (*Id.* at 11).  The Bankruptcy Court concluded that these two positions exemplified the "divided loyalty" of the law firm.  (*Id.*).  This Court agrees and, upon review the record as a whole, cannot find that the Bankruptcy Court abused its discretion in reaching this conclusion.

Likewise, the Bankruptcy Court did not err in determining that Quarles & Brady possessed additional conflicts.  The circumstances of the Jennings-RKB loan and subsequent cancellation of indebtedness clearly require the law firm to investigate and pursue the recovery of funds for the Jennings estate while opposing those efforts for the benefit of the RKB estate.  (*Id.* at 12).  Again, the Court agrees that Quarles & Brady cannot provide either estate an "impartial, independent evaluation of the potential claims."  *In re Prince*, 40 F.3d at 360.  For the same reason, the law firm cannot independently evaluate claims arising from the leases and transactions concerning the Clinton Street Property. (Bankr. Dkt. No. 889, p. 12).

In summary, the Court concludes the Bankruptcy Court did not err when it disqualified Quarles & Brady based on the law firm's initial and continued violation of the Bankruptcy Code's disclosure rules coupled with the law firm's lack of disinterestedness.

---

each schedule was reviewed by Nashban.  (Bankr. Dkt. No. 889, p. 5).  In addition, the law firm's position is antithetical to the best interests of at least one of the Bankruptcy estates. Moreover, the firm continued to press the disclosure of this loan in its initial brief before this Court.  (Doc. No. 33, pp. 44-46).  Having repeatedly represented the existence of this loan to the Court, Quarles & Brady cannot now in good faith dispute its existence.

**D.**     **Compensation and Disgorgement of Fees**

**1.**     **Bankruptcy Court's Findings of Fact and Conclusions of Law**

The Bankruptcy Court noted that Section 328(c) of the Bankruptcy Code "permits but does not require a court to deny compensation to professionals who are found to be disinterested," and that denial of fees is proper where there is injury to the debtor estate. (Bankr. Dkt. No. 889, p. 13).  The Bankruptcy Court reasoned that, despite the numerous statements of Quarles & Brady to the contrary, the "injury" at issue is not whether "no harm was done" but rather the fact that the professional was unable to "independently evaluate claims for its client." (*Id.*).  The Bankruptcy Court, therefore, determined that the law firm's "initial and continuing violation of the disclosure rules, its non-disinterestedness, and the injury to Debtors resulting from its inability to independently evaluate the various claims, transfers, and interests" warranted complete denial of compensation and disgorgement of any pre-petition retainer.  (*Id.*).

**2.**     **Arguments on Appeal**

On appeal, Quarles & Brady contends that the Bankruptcy Court erred when it denied the law firm all compensation and ordered the disgorgement of any pre-petition retainer.  (Doc. No. 33, pp. 55-56).  The firm argues that the Bankruptcy Court's decision should be reversed for its reliance on an incorrect interpretation of the law as well as for its clearly erroneous findings of fact.  (*Id.*).  Quarles & Brady reasons that the Bankruptcy Court erred when it determined the injury to the Debtor estates was due to the fact that the professional was unable to independently evaluate claims for its clients.  (*Id.* at 57).  The law firm avers that the denial of compensation is patently unfair where it did not engage in any misconduct and there has not been any finding of intentional concealment or

impropriety. (*Id.* at 58). It also argues that denial is unfair in view of the significant results achieved on behalf of the Debtor estates. (*Id.* at 59-61). As such, Quarles & Brady concludes that "the appropriate remedy would be reduction in fees awarded, but not total denial of fees." (*Id.* at 61). Lastly, the law firm contends that Maxfield's delay in opposing its employment and application for fees and the Bankruptcy Court's delay in ruling on Maxfield's opposition was unfairly prejudicial. (*Id.* at 62-64). Quarles & Brady also reiterates its argument that its representation was proper under Section 327(c) of the Bankruptcy Code. (*Id.*).

The U.S. Trustee, in contrast, asserts that the Bankruptcy Court was correct in denying all of Quarles & Brady's compensation and requiring the disgorgement of any pre-petition retainer based on both the law firm's failure to disclose its connections with the Debtors and its lack of disinterestedness. (Doc. No. 38, pp. 39-42). First, the U.S. Trustee notes that the failure to disclose a professional's connections is sufficient in and of itself to support denial of compensation and disgorgement of any pre-petition retainer. (*Id.*). As such, the U.S. Trustee reasons that the Bankruptcy Court properly observed that it had the discretion to disqualify the law firm or to deny its fees based on the inadequate disclosure alone or in conjunction with its simultaneous representation of the Debtors. (*Id.* at 42-43). The U.S. Trustee also contends that Quarles & Brady's misconstrues the Eleventh Circuit's holding in *In re Prince* and the meaning of Sections 327(a), 327(c) and 328(c) of the Bankruptcy Code, arguing that the Bankruptcy Court properly denied counsel's fees under Section 328(c) because of a lack of disinterestedness and not because the Court found an actual conflict of interest. (*Id.* at 44-45).

Next, the U.S. Trustee contests Quarles & Brady's characterization of the Bankruptcy Court's ruling as "unfair."  (*Id.* at 49-53).  The U.S. Trustee avers that this was a problem of the law firm's "own making" and faults the firm for not making full disclosure or voluntarily withdrawing from the case.  (*Id.* at 50-51).  Moreover, the U.S. Trustee asserts that the record reflects actual injury to Debtor estates and "other instances where Quarles & Brady's conduct demonstrated its inability to fulfill its fiduciary duties." (*Id.* at 52).

Maxfield contends that the Bankruptcy Court properly held that Section 328(c) of the Bankruptcy Code operates to bar the compensation of professionals who are not disinterested under Section 328(a).  (Doc. No. 41, pp. 41-44).  Secondly, Maxfield argues that denial of all fees and disgorgement of any pre-petition retainer was proper in this case because actual harm to the Debtor estates was shown.  (*Id.* at 44-45).

### 3.    Analysis

Section 328 of the Bankruptcy Code governs compensation of professionals. Section 328(c) permits the Bankruptcy Court to deny a professional's compensation and provides:

> Except as provided in section 327(c). . . the court may deny allowance of compensation for services and reimbursement of expenses of a professional person . . . if, at any time during such professional person's employment under section 327 . . . such professional person is not a disinterested person, or represents or holds an interest adverse to the interest of the estate with respect to the matter on which such professional person is employed.

11 U.S.C. § 328(c).  By its plain terms, the statute is permissive.  *In re Prince*, 40 F.3d at 360.  The statute permits a Court to deny compensation to professionals found not to be disinterested but, at the same time, does not require the denial of fees to those professionals.  *Id.* at 359.  Moreover, a Bankruptcy Court's discretion in awarding

compensation for services performed during Bankruptcy proceedings deserves great deference. *Id.*

Again, the leading case in the Eleventh Circuit concerning Section 328(c) is *In re Prince*.  In that case, a law firm represented at various times a Chapter 11 debtor, his spouse, and a corporation owned and operated by the debtor. *Id.* at 358.  In the course of events, it became apparent that the law firm performed undisclosed pre-petition and post-petition legal services on behalf of the debtor, his spouse and his corporation. *Id.* at 358-59.  Such representation included the performance of estate planning services for the debtor and his spouse, participation in a questionable transfer of property from the debtor to his spouse and representation of the debtor's spouse in a suit seeking execution of a guaranty in favor of a creditor of the debtor. *Id.* at 359.  In view of these connections, the law firm twice amended the application of employment. *Id.*  First, the law firm disclosed, *inter alia*, the prior performance of estate planning services for the debtor. *Id.* Subsequently, the law firm disclosed in its second amendment that it had performed estate planning services for both the debtor and his spouse. *Id.*  The law firm then withdrew as debtor's counsel and sought compensation for services rendered. *Id.*  The Bankruptcy Court granted the compensation, and the creditor appealed. *Id.*

On appeal, the Eleventh Circuit discussed a Bankruptcy Judge's discretion in deciding compensation under Section 328. *See id.* at 359-61.  Noting the permissive nature of the statute, the Court reasoned that the denial of fees should generally not be rigidly applied by the Bankruptcy Court unless there is injury or prejudice to the debtor estate. *Id.* at 360.  "The accurate measure of prejudice," the Court noted, "is not what [the law firm] actually did or did not do in handing [debtor's] case, but rather whether [the law

firm] could have unbiasedly made decisions in the best interest of its client." *Id.* The Court observed that the law firm could not possibly qualify as a disinterested person as it was "in the unfortunate position of having too many masters." *Id.* at 361. As such, the Court determined that the Bankruptcy Court abused its discretion in awarding fees to such a conflict laden professional. *Id.*

The reasoning of *In re Prince* immediately belies several of Quarles & Brady's arguments on appeal. First, the law firm presents a "no harm no foul" argument, and then it criticizes the Bankruptcy Court for determining that the injury to the estates was due to the fact that Quarles & Brady could not independently evaluate the claims for its clients. (Doc. No. 33, pp. 55-57). The Bankruptcy Court, however, correctly followed the blaze marks left by the Eleventh Circuit. The injury is the deprivation "of a conflict-free, impartial, independent evaluation of the potential claims of and against [the Bankruptcy estate.]" *In re Prince*, 40 F.3d at 360. Likewise, Quarles & Brady cannot take refuge in a lack of misconduct, intentional concealment or impropriety by the law firm. The Eleventh Circuit clearly reasoned that the injury or prejudice does not arise from what the professional did or did not do. *Id.* Rather, the injury arises from the professional's inability to make unbiased decisions in the best interest of its client. *Id.* Based on this Court's findings concerning the presence of several actual conflicts of interest, *see supra* Part II.C.3, the Bankruptcy Court did not abuse its discretion in finding there was injury to the Bankruptcy estates.

In a last effort, Quarles & Brady falls back on an old chestnut that Bankruptcy proceedings are primarily equitable. The law firm argues that the delay in opposing its employment and the subsequent delay in ruling on the opposition were unfairly prejudicial

and that, in the very least, some compensation should be granted.  (Doc. No. 33, pp. 62-64).  Quarles & Brady, however, is not on firm ground once it traverses into the slough of equity.  The law firm's Bankruptcy Rule 2014 disclosure in this case was conclusory at best, and most relevant client connections were completely omitted.  Quarles & Brady did not attempt to amend the application or the firm's supporting affidavit even though it knew or should have known of undisclosed connections.  The law firm took it upon itself to evaluate any possible conflicts of interests arising before and during representation of the Debtors, thereby usurping the role of the Bankruptcy Court.   Quarles & Brady was unable to discharge its responsibilities in view of the multiple conflicts of interest found by the Bankruptcy Court.  Lastly, because of its failure to appreciate the role of counsel, Quarles & Brady prejudiced the Bankruptcy estates that the law firm represented and deprived each of an unbiased, independent assessment of available and outstanding claims.  The Court finds no reason to use equity to award compensation to a law firm with such a history.

In view of the above, the Bankruptcy Court did not abuse its discretion when it completely denied compensation to Quarles & Brady in these consolidated cases and required the disgorgement of any pre-petition retainer.

### E.    Denial of Motion to Alter, Amend or Vacate

On December 16, 2004, the Bankruptcy Court denied the Debtors Motion to Alter, Amend or Vacate the Order disqualifying counsel and denying counsel's request for fees.  (Bankr. Dkt. No. 921).  The U.S. Trustee argues that the Bankruptcy Court correctly denied the motion to alter as the law firm failed to show a manifest error of law, failed to cite new legal authority or evidence, and failed to make any showing required by the Federal Rules of Civil Procedure.  (Doc. No. 38, pp. 53-55).  The Court agrees.  Upon review of the record

on appeal, the Court finds that the Bankruptcy Court did not abuse its discretion in denying the motion to alter.

### III. Conclusion

Based on the foregoing, the November 16, 2004 Order of the Bankruptcy Court and its findings of fact and conclusion of law are **AFFIRMED**.


**DONE** and **ORDERED** in Chambers in Orlando, Florida on September __7____, 2005.


PATRICIA C. FAWSETT, CHIEF JUDGE
UNITED STATES DISTRICT COURT




Copies furnished to:

Counsel of Record